## L. E. Fidler v. Charles Paxton.

1. COMMERCIAL PAPER—*Assignee of, Before Maturity and for a Valuable Consideration.*—A party who takes commercial paper before maturity, for a valuable consideration, without knowledge of any defects of title, and in good faith, holds it by a valid title against the world. Suspicion of defect of title, or the knowledge of circumstances which would excite suspicion in the mind of a prudent man, or gross negligence on the part of the taker at the time of the transfer, will not defeat his title. That result can only be produced by bad faith on his part. The burden of proof lies on the person who assails his rights.

Assumpsit.—Common counts. Appeal from the Circuit Court of Edgar County; the Hon. HENRY VAN SELLAR, Judge, presiding. Heard in this court at the November term, 1901. Affirmed. Opinion filed February 19, 1902.

J. W. HOWELL and DUNDAS & O'HAIR, attorneys for appellant.

VAN SELLAR & SHEPHERD and H. S. TANNER, attorneys for appellee.

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court.

Appellee, Charles Paxton, a grain dealer of Kansas, Illi-

nois, brought an action of assumpsit in the Circuit Court of Edgar County against appellant, L. E. Fidler, a farmer, to recover upon a promissory note which appellee had purchased before it was due, from one Griffith, for a valuable consideration; which note was executed and delivered by appellant to Griffith and payable to his order.

The declaration contained a special count on the note, and the appropriate common count. Appellant pleaded *non assumpsit*, and the parties stipulated that any evidence could be introduced under that plea which might be proper under any other plea well pleaded.

The trial was by jury and resulted in the court directing a verdict and entering a judgment in favor of appellee for $89.95, being the amount due according to the terms of the note.

Appellant moved for a new trial, which being denied, he took an exception, brings the case to this court by appeal, and insists that the trial court erroneously directed a verdict against him which was against the evidence and the law applicable thereto.

It appears that appellant lived upon a farm, and being solicited by one Griffith, an agent for a life insurance company, to take a $5,000 policy of insurance, made application therefor, and in part payment of the first year's premium, gave Griffith his promissory note which was as follows:

"CONLAGUE, ILL., 8–30, 1900.

December 25, 1900, after date, I promise to pay to the order of C. C. Griffith, eighty-five and 40–100 dollars at Kansas, Ill., value received, with interest at 7 per cent per annum.

(Signed)        L. E. FIDLER."

When the note was given, it was understood between appellant and Griffith, that the former was to be examined by the company's physician before being given the policy, and that if, upon investigation, appellant should not be satisfied to take the policy, Griffith would return the note to him.

When appellant learned of the terms of the policy which the company proposed to give him, he was unwilling to

receive it or be examined by the company's physician, and claiming that the policy was not as favorable to him as Griffith had represented when he gave him his note, requested Griffith to return the note to him. Griffith did not return the note to appellant, but for a valuable consideration, sold and assigned it to appellee about two months before it was due.

Some time in the fall of 1900 (the time is not given) a son of appellant, in pursuance of a request sent him by appellee, came to appellee's office in Kansas, and, as testified to by the son:

"Mr. Paxton said he wanted to ask me a question about this note that father gave to Mr. Griffith, and he wanted to know whether it would be all right or not; I suppose whether it was good or not; that's about what I thought, and I told him that there would more than likely be trouble about the note, as father had spoken to me that he did not get what he was expecting, and he thought that he wouldn't pay the note, and I told Mr. Paxton that he better not trade for it if he didn't want trouble, and he says, 'Very well, I have enough trouble of my own without buying trouble, and if you say there will be trouble over it, I will not buy the note.'"

Appellee testified with reference to this conversation, that he sent for appellant's son and "he (the son) came to my office and I asked him in regard to his father's financial standing, on account I didn't know his father, but I knew him; didn't know his father only by hearsay. I asked him if he thought his father was able to pay the note. He said he thought he was, small notes; he said he thought he was in the habit of keeping his debts paid. He asked me why I wanted to know and I told him then about the Griffith note and I remarked something about trouble, don't remember exactly what it was, I expect he remembers it better than I do. At that conversation, I had the note in my possession; but I did not tell him. I had asked our bank about the responsibility of the father, and then I sent for the son. The son told me he thought or had heard that there would be some trouble; he did not say anything to me about not

buying the note. And that is about the extent of the conversation as far as I can remember." (Record, p. 25.)

The only notice, if any, which appellee had concerning the consideration of the note or the circumstances under which it was given, before he purchased it, was what appellant's son said to him in the conversation above referred to.

There is no dispute but that appellee is the holder of the note by purchase and assignment from the payee thereof for value before maturity, but counsel for appellant insists that the testimony of the son properly tends to show that appellee purchased the note after he was informed that the consideration for which it was given had failed, and that he was guilty of such bad faith as precludes him from recovering upon it; and that although appellee denied that he received such notice before the purchase, and claimed that it was not received until afterward, yet it ought to have been submitted to the jury to determine which ought to have been believed, and for that reason the court committed prejudicial error against appellant in directing a verdict against him.

The contention of counsel for appellee is that the testimony of the son, if true, does not tend to show that appellee was guilty of bad faith even if he had the conversation with the son as testified to by him before he purchased the note; and that when the testimony of appellee concerning such conversation is also considered, that it clearly appears that appellee purchased the note in good faith.

In Comstock v. Hannah, 76 Ill. 530, the Supreme Court of this State followed the rule laid down by the Supreme Court of the United States in Goodman v. Simons, 20 How. 343:

"The party who takes it (commercial paper) before due, for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid against the world. Suspicion of defect of title, or the knowledge of circumstances which would excite suspicion in the mind of a prudent man, or gross negligence on the part of the taker at the time of the transfer, will not defeat his title. That result can only be produced by bad

Fidler v. Paxton.

faith on his part. The burden of proof lies on the person who assails the right claimed by the party in possession. Such is the settled law of this court and we feel no disposition to depart from it."

That rule was adhered to in Sheeves v. Allen, 79 Ill. 553 and Matson v. Alley, 141 Ill. 284.

In the Alley case, *supra*, Justice Scholfield, in speaking of whether the evidence showed that Bliss, the assignee of a promissory note, was guilty of bad faith in purchasing the note in question in that case, from the maker, so as to preclude him from recovering against the maker, after quoting the rule which we have quoted above, said :

"The evidence here fails to show bad faith in Bliss in obtaining the assignment of these notes, but expressly proves the contrary. The utmost that can be said in that respect is, that he might, by inquiry, have ascertained the consideration for which the note was given. But this only proves that in failing to make such inquiry he was negligent and, under what is quoted, is insufficient to affect him with notice."

And so we think in the case at bar. The utmost that the testimony of the son of appellant tends to prove is, that appellee had notice that the father claimed he did not receive what he expected for the note, and that by inquiry, appellee could have ascertained the consideration for which the note was given and that it had failed. But that only proved that in failing to make such inquiry, appellee was negligent; and, under the rule above quoted, negligence in that respect is insufficient to preclude appellee from recovering upon the note in question which he purchased from the maker, and which was assigned to him for a valuable consideration before it was due, and before appellee had notice that the consideration for which it was given had failed. And therefore the court properly directed a verdict for appellee, and the judgment will be affirmed.